## RICHARDSON *v.* DICKINSON.

A. and B. advanced $500 each, to be paid by B., as his contribution to the "Cheshire Company," of which he was a member; and agreed that, upon the final distribution of the effects of the company, they should share in certain proportions, the profits accruing from the enterprize, and that the directors of the company might retain A.'s share, as his attorneys. Before the Cheshire company realized any profits, B. sold his interest therein to the other members, at an advance of $1,000, which he received. *Held*, that he was liable to account with A. for the stipulated portion of that advance, as profits.

*Held, also*, that in the absence of fraud, he was liable for no more, although it appeared that other members of the company, having equal shares with B., soon afterwards sold them at a greater advance.

COVENANT. On the 6th of, February, 1849, the defendant and eight others, residing in Keene and the vicinity, entered into co-partnership, by the name of the Cheshire Company, for the purpose of trading and mining in California. The articles provided, among other things, that each of the nine partners should furnish $1,000 in cash as capital; should from the time of the sailing of the vessel, during reasonable business hours, give his personal attention and devote his time wholly to the interests of the company, and should in no way engage or become interested in any speculation or business for his own advantage; that an account of the joint stock and joint liabilities, should be taken at the expiration of one year from the date of said agreement, and a division of the profits and losses made, if deemed expedient by said company; that any member might withdraw from the company by the written consent of the remaining members; and any member withdrawing without such consent should forfeit all his interest in the company; that the officers of the company should consist of three directors, chosen by the company, who should have the general direction of its affairs, and that said partnership should continue till the 1st day of November, 1850.

On the 10th of February, 1849, the plaintiff and defendant entered into a covenant, by which they agreed, 1. to

furnish each the sum of $500, to be paid to the directors by Dickinson, as his share of the capital stock of said company; 2. that Dickinson should join with said company, continue and co-operate with them agreeably to their articles of association, and not separate himself from the company, except in conformity with said articles; and in case of such withdrawal the directors might, as the plaintiff's attorneys, retain and pay over to him all the share and profits which might accrue and belong to him under this agreement; 4. that Richardson should in no event be liable on any contract of Dickinson or of the Cheshire Company; 6. that no part of the moneys furnished under this agreement, or of the profits accruing thereon, which might belong to Richardson should be withdrawn from the company without his written consent, unless a dividend should be made, in which case Dickinson should remit one fourth accruing on his share to the plaintiff; 8. in case of any disagreement with the parties, on the return of the company or settlement of its affairs, the matters in controversy to be submitted to arbitrators, of whom two shall be chosen by each party; and if either party refuse to join in the arbitration the other may proceed without him. 9. " The said Richardson shall in no event be subject to any loss beyond the sum of $500, paid by him by virtue of this agreement.' And in the final division and distribution of the effects of said company, the said Richardson shall be entitled to one fourth part, and the said Dickinson to three fourth parts of the profits accruing from the enterprize. The sum of $1,000, advanced by the parties, shall be equally divided between them, if there should be no loss; or in proportion equally, if less than the whole amount should be lost."

The plaintiff advanced to the defendant $500, in pursuance of the contract.

The company sailed March 1, 1849, and the defendant continued and coöperated with the other members until about the 1st of November, 1849, at which time Thomas

G. Wells, one of the directors, in behalf of the company, purchased the interest of the defendant in the concern, and paid him for it $1,500, and retained for and afterwards paid over to the plaintiff $500. This purchase was made without the knowledge or consent of the plaintiff.

At this time, no account of the profits or state of the company's affairs had been taken, but no profits had accrued.

On the 28th of the same month the profits were found to amount to $624,23, by a statement furnished at the time by the directors. At that time the company was dissolved, the other members selling their respective interests to Wells for $3,000 each.

On the 19th of May, 1851, the plaintiff made a demand in writing on the defendant, to pay over to him one fourth part of the profits made by him as a member of the Cheshire Company, and requested him, in case of refusal, to appoint two arbitrators, to be joined with two others chosen by the plaintiff, to determine and award concerning that claim, and all other matters in controversy arising under the contract between them, with which demand and request the defendant refused to comply.

If, upon the foregoing statement, the plaintiff is entitled to recover any thing of the defendant, the court shall order judgment for such sum; otherwise for the defendant.

*Wheeler & Faulkner*, for the plaintiff.

On the assumption that the sale by the defendant to Wells was in accordance with the provisions of the articles of the company, the plaintiff claims that he is entitled to one fourth part of the $1,000 received of Wells, above the original investment as his proportion of the profits; that all the money received above the investment, whether before or at the time of the sale, was profits in which he had a right to share; and if the $1,000 may be treated as money received for prospective profits, or something in the nature of the good will attached to the place or business, he is equally

entitled to his share of it. *Crawshay* v. *Collins,* 15 Vesey 18.

The defendant is liable on his covenant not to withdraw any of the profits, there having then been no dividend or dissolution of the company.

The defendant is liable for having wrongfully separated himself from the company.

If the transaction with Wells was not part of the company business, in which the plaintiff had a right to participate, then the defendant has been engaged in business on his own account, and on that ground is liable for a breach of the covenant.

*W. L. Foster,* for the defendant.

The covenant that " no part of the moneys furnished under this agreement, or of the profits accruing thereon, shall be withdrawn from said company by said Dickinson, without the written consent of said Richardson," has not been broken by the defendant.

By the second section of the articles between the plaintiff and defendant, the plaintiff, under his hand and seal, appointed the directors of the Cheshire Company his agents, to guard and protect his interests; they had notice of this appointment, and by their subsequent action accepted it. In the discharge of their duty under it, of retaining for or paying over to the plaintiff all the share and profits which might belong to him, they retained for and paid to him $500. If they, as the plaintiff's agents, made a mistake, the remedy is against them.

2. By the term profits, we understand the *earnings* of the company, over and above the capital and expenses. When the defendant withdrew there were no profits. The sum paid to Wells, by the defendant, was a consideration for his withdrawal.

3. The purchase made by Wells, in behalf of the company, is equivalent to their written consent to his with-

drawal. And if it is not, the measure of damages for a wrongful withdrawal could be no more than one fourth of the profits accrued at the time; and no profits having accrued, the defendant could not be liable.

4. It does not follow because Wells paid $3,000 to each of the members who remained on the 28th of November, that he would have paid that amount to the defendant, had he remained.

5. If the sale to Wells was a private speculation of the defendant, it was one to which the other members of the company consented, and was therefore no violation of the articles of association.

6. On the dissolution of the company, November 28th, the profits were ascertained to be $624,23. The plaintiff can recover, if any thing, no more than one fourth of one ninth of that sum, increased or diminished by the profits or losses on one fourth of the capital of the plaintiff and defendant, between the sale and the 28th of November.

7. The plaintiff might have proceeded *ex parte* with the arbitration. His omission so to do is a waiver of his right to damages.

Woods, J. This action arises out of an agreement between the plaintiff and defendant to share between them, in certain proportions, the profits which might result to the latter in an adventure of the Cheshire Company, to which he was a party. The plaintiff advances $500, being one half of the defendant's just contribution to the adventure referred to; the defendant agrees to associate himself with the company, to conform with the terms of their association so long as he shall remain in it, and not to separate from it except in conformity with those terms. " And in the final division and distribution of the effects of said company, the said Richardson shall be entitled to one fourth part, and the said Dickinson to three fourth parts of the profits accruing from the enterprize. The sum of $1,000, advanced by the par-

ties, shall be equally divided between them, if there should be no loss," &c. They also agree that in case of a dividend of profits, Dickinson shall remit to Richardson one fourth part of the profits accruing on his share. There are some other stipulations, but all are subordinate to the ruling idea that Richardson, advancing one half the capital to make up the defendant's contribution to the Cheshire Company, was to be entitled to one fourth part of the profits that might accrue from the enterprize.

The Cheshire Company sailed on the 1st of March, 1849, and prosecuted their adventure until about the 1st of November following, when the defendant sold his interest in it to his associates for $2,000. Of this he received $1,500, the remaining $500 having been retained by the directors for the plaintiff, and afterwards paid to him.

By this sale the defendant has clearly gained $1,000, but contends that he is not bound to account with the plaintiff for any part of it, because the Cheshire Company had, at the time of the transaction, made no profits. But the defendant himself made a profit by means of his share in the company, and it is for one fourth part of the profits, accruing to himself, and not to the Cheshire Company, that he has undertaken to account. " Profits accruing from the enterprize " to the amount of $1,000, are found in the defendant's hands, and whether the Cheshire Company gained or lost on the whole, seems hardly material as respects his liability, so long as the gain has accrued to his share, or to himself, by reason of his share in the enterprize. But if the parties intended, by a somewhat doubtful form of expression, to apportion between themselves the defendant's share of the profits which the company might make, it does not lie with the defendant, who has sold his interest in the company and his right to the eventual profit, at an advance of $1,000, to deny that there were, or that " in the final division and distribution of the effects of the company," there

would have been profits accruing to his share to that amount. In finding that at the date of the sale no profits had accrued to the *company,* the case must not be understood to disaffirm a fact which it perfectly establishes, that something had intervened to give a value to the *shares,* greatly in advance of the first investment. What this was does not distinctly appear, nor whether it affected the interests of the company collectively, or attached only to the shares in severalty. The defendant does not explain how the value of the shares appears to have doubled and trebled, while the value of the whole remains the same. His interest in the company must, till otherwise explained, be taken to have been his interest in the final distribution of its effects. This is what he sold, and what he had undertaken to account for with the plaintiff. If he has sold it for more than its value, he must nevertheless account.

Nor is the plaintiff bound by the act of the directors, who were authorized to retain in his behalf the share and profits which might belong to him. There is no evidence that the directors assumed to adjust, in behalf of the plaintiff, his claim upon the defendant, or that they had any authority to do so. The plaintiff agrees with the defendant that the directors may retain his share. He does not agree to forfeit it if they neglect to do so.

The plaintiff's omission to proceed to arbitration is no waiver of his claim. "It requires a strong case to deprive a party of his right to a decision in this court." Lord *Eldon* in *Street* v. *Bigby,* 6 Ves. 815. The plaintiff had, at most, but an option to proceed *ex parte* on the refusal of the defendant to join in the arbitration. He had not bound himself to do so.

A court of law cannot infer that there was fraud in the transaction of the 1st of November, and that the defendant might have received for his share an amount approaching somewhat nearer to the value which the other shares bore

four weeks later, and, therefore, limit his liability to what he actually received from the sale.

> *Judgment for the plaintiff for $250, and interest from the time of demand made.*